UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDSNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/14/11

------------------------------------------X

SUSAN LEE HARE,

        Plaintiff,

  - against -

JAMES HAYDEN ET AL.,

        Defendants.

------------------------------------------X

09 Civ. 3135 (RWS)

OPINION

**Sweet, D.J.**

     Defendants Reverend Maria Lopez ("Lopez"), Deputy Superintendant James Hayden ("Hayden"), and Grievance Supervisor Kim Watson ("Watson") (collectively, "Defendants") have filed motions for summary judgment. For the reasons stated below, these motions are granted.

**Prior Proceedings**

     Plaintiff Susan Lee Hare ("Hare" or "Plaintiff") filed her complaint on April 1, 2009, alleging misconduct by Superintendant Ada Perez, Superintendant Elizabeth Williams, Hayden, Lopez, and Watson. Defendants Perez, Williams, Hayden, and Watson answered on September 16, 2009. Defendant Lopez answered on

1

August 31, 2010.  On November 22, 2010, the Court signed off on the stipulated dismissal of Defendants Perez and Williams.

Defendant Lopez and Defendants Hayden and Watson filed separate motions for summary judgment on December 13, 2010 and December 14, 2010, respectively.  These motions were heard on submission on January 19, 2011.

**Statement of Facts**

In August 2008, Plaintiff was programmed as a Catholic clerk assisting Father O'Shea, the Catholic Chaplain at Bedford Hills Correctional Facility ("BHCF").  She was programmed for both the morning and afternoon shifts.  See Deposition of Susan Hare, attached to Declaration of John Knudsen ("Knudsen Dec") as Exhibit A ("Hare Dep."), at 15.  On August 14, 2008, a meeting occurred between Plaintiff, Father O'Shea, and Hayden.  At that meeting, Father O'Shea recommended that Plaintiff remain the Catholic clerk after his retirement on August 15, and Hayden agreed that Plaintiff remain in the position. Affirmation of James Hayden ("Hayden Aff."), ¶ 3, attached to Knudsen Dec. as Exhibit C.

Plaintiff then sent a letter dated August 16, 2008 to Hayden in which she made several allegations against Reverend Lopez, including that Lopez met with Hare on August 15, that

2

Lopez ordered the moving of a cabinet with Catholic items, and that Lopez ordered her clerks to pack up the Catholic items in the Sacristy into bags and put them out for the trash. See Hare Letter dated Aug. 18, 2008, attached to Knudsen Dec. at Exhibit B at Hare 27-31. The underlying theme of Plaintiff's letter appears to have been that Reverend Lopez was using her position to defile the Catholic religion. See Id. at 30 ("the Catholic (sic) have been defiled by this woman and her community.") In response to Plaintiff's letter and to address the allegations, Hayden set up a meeting on August 18, 2008 with Plaintiff, Lopez and two other inmates, Tuttle and Ramsey. Hayden Aff., ¶ 5.

The August 18 meeting between Plaintiff and Reverend Lopez was very contentious. Hayden Aff. ¶ 6. During the meeting, Hayden attempted to verify the allegations made in Plaintiff's August 16 letter. See Hare 110-11. He could not substantiate any of Plaintiff's allegations and determined that they were largely hearsay. Id.; Hayden Aff, ¶ 6. According to Hayden, Lopez did not attempt to attack Plaintiff during that meeting. Hayden Aff. ¶ 7; Affirmation of John Ruiz, ¶ 2, attached to Knudsen Dec as Exhibit D.

Plaintiff contends that on August 18, Lopez verbally abused and physically threatened her in the chapel. Pl. Opp.

3

Aff., at 4-7.  Plaintiff claims that this interaction led to an investigation which prevented her from working as Catholic clerk. Id. at 4. It is unclear whether this interaction was separate from the August 18, 2008 meeting.

Plaintiff filed a grievance alleging that Reverend Lopez verbally harassed her during the August 18 meeting.  See Hare 104-105.  Hayden notified the Superintendent's Office of his personal observations during that meeting, which were incorporated into the Superintendent's response.  See Hare 103; Hayden Aff., ¶ 8. Following the August 18 meeting, Plaintiff did not appear for her program assignment as Catholic clerk for two weeks, after which time Reverend Lopez forwarded a memorandum to counselor Greenfield on September 2, 2008, requesting that Plaintiff be removed from her position as Catholic clerk and noting that no new Catholic clerk should be named until a Catholic Priest had been hired.  See Hare 42.  Plaintiff contends that this report was false and that she showed up for work but was sent away.  Pl. Opp. Aff. at 9. Counselor Greenfield contacted Hayden to discuss Lopez's request for Plaintiff's removal.  Hayden Aff., ¶ 9.  According to Hayden, Plaintiff was removed from her Catholic clerk position by him on September 8, 2008, at the latest.  Hayden Aff., ¶ 11.  Plaintiff contends that she was not removed until September 15, 2008.  Pl. Opp. Aff. at 9.

Hayden claims to have removed Plaintiff from her position for multiple reasons.  Initially, it was reported that plaintiff failed to report for two weeks for programming after Father O'Shea retired.  Hayden Aff., ¶ 10; Hare 42.  Also, Hayden determined that Plaintiff was being disruptive to the provision of Catholic services at Bedford Hills.  Hayden Aff. ¶ 10.  Hayden had investigated plaintiffs numerous allegations about Reverend Lopez and her alleged interference with the Catholic programs and could not substantiate any of them.  Id.  For example, Hayden states that Plaintiff was telling inmates and outside civilians in the Catholic community that Lopez had the cabinet with Catholic items in it moved, and had articles removed from the Sacristy.  Id.  Hayden had received a call from Deacon Lou Santore, a civilian volunteer, who had been told these claims by Plaintiff and was upset.  Hayden investigated these claims and determined them to be inaccurate. Id.  Instead, he determined that the cabinet was moved by a volunteer from the long-term inmate committee, and that Plaintiff appeared to be the only person with the combination to the Sacristy.  Id.; Affirmation of Kowsillia Magoo, ¶ 4, attached to Knudsen Dec. as Exhibit E.  As part of his responsibilities as Deputy Superintendent of Programs, Hayden states that he could not allow inmates to use their programming position to disrupt the inmate and civilian volunteer populations.  Id.

5

Additionally, Hayden discussed this issue with all the other chaplains at the facility, who agreed that Plaintiff should no longer remain as the Catholic clerk. Hayden Aff., ¶ 11. This included Sister MaryAnn Collins, who was a part-time employee at the facility and apparently effectively acted as head of the Catholic community there. Id. Finally, Hayden determined that Plaintiff and Reverend Lopez were not able to work together. Id. Plaintiff drafted a handwritten grievance complaint on September 4, 2008, in which she complained that Reverend Lopez was retaliating against her because of her prior grievance, and asked that she "stop being harassed and retaliated against by Rev. Lopez." Hare 40-41. Defendant Watson responded to that grievance, noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could no longer be harassing her. Hare 39. Watson states that this was an attempt by her to informally resolve Plaintiff's grievance. Affirmation of Kim Watson ("Watson Aff."), at ¶ 3, attached as Exhibit F to Knudsen Dec. Plaintiff did not request to have the grievance formally processed, but if she had, Watson claims she would have done so. Id. Plaintiff contends that she took Watson's response to mean that she could not file a grievance.

6

**Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in evidence."  Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion.  See Id. at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

**Plaintiff's Retaliation Claims are Dismissed**

In order to state a valid retaliation claim, a plaintiff must allege that her actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal citations omitted). There must be a "causal connection between the protected [conduct] and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal citation and quotations omitted). "A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.'" Anderson v. Lapolt, No. 07 Civ. 1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000)); see also Sawyer v. Jowers, No. 08 Civ. 186, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred") (internal citations omitted); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (if

8

plaintiff's claim of retaliation had been based on circumstantial evidence alone, and not also supported by direct evidence of defendant's admission, Court would be inclined to grant summary judgment); Bussey v. Phillips, 419 F. Supp. 2d 569, 585 (S.D.N.Y. 2006) ("In order to survive summary judgment on a retaliation claim, a plaintiff bears the burden of showing two genuine issues of material fact: first, that the plaintiff engaged in constitutionally protected conduct, and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

Even where a plaintiff meets her burden of establishing a prima facie retaliation claim, it is still subject to dismissal if sufficient other non-retaliatory reasons to take the adverse action were present.  See Bussey, 419 F. Supp. 2d at 585; Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002).  Furthermore, inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison.  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987); Hodges v. Jones, 873 F. Supp. 737, 745 (N.D.N.Y. 1995) (citing Lane v. Reid, 575 F. Supp. 37, 39 (S.D.N.Y. 1983).  Inmates can be removed from prison assignments for virtually any reason, provided that such decisions are not based on the inmate's race or religion. Bussey, 419 F. Supp. 2d at 589 (S.D.N.Y. 2006).

9

It should be noted that "courts must approach prisoner claims of retaliation with skepticism and particular care," as such claims are "easily fabricated" and run the risk of "unwarranted judicial intrusion into matters of general prison administration." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). See also Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (noting that prisoner retaliation claims are "'prone to abuse' because prisoners can claim retaliation for every decision they dislike.") (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Colon, 58 F.3d at 872 ("because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care."); Gill, 824 F.2d at 194 (because of the potential for abuse, the Court of Appeals requires a "higher level of detail in pleading [retaliation claims]").

Plaintiff contends that she was removed from her position as Catholic clerk by Hayden in retaliation for her

complaints against Lopez.[1]  There is no dispute that Plaintiff's complaints against Lopez are protected speech and that her removal from her position as Catholic clerk was an adverse action; however, Plaintiff fails to establish the causal link between her complaints and her dismissal, particularly in light of legitimate non-discriminatory reasons for her dismissal given by Hayden.

As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant. See Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer).  Here, even giving Plaintiff every reasonable inference, Plaintiff fails to establish that Hayden had a motive to retaliate arising from her complaints against Lopez, and that Hayden's retaliatory motive formed the basis for her dismissal.

---

1 To the extent that Plaintiff's allegations of retaliation are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground.  Kearney v. County of Rockland, 373 F. Supp. 2d 434,440-41 (S.D.N.Y. 2005) ("plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.")

To the extent Plaintiff contends that Hayden was
incompetent or covering up Lopez's misconduct, the evidence
before the Court indicates otherwise.  Hayden investigated
Plaintiff's claims against Reverend Lopez.  The August 18, 2008
meeting between Plaintiff, Hayden and Lopez was called in order
for Hayden to investigate Plaintiffs allegations in her August 16
letter, see Hayden Aff., ¶ 5, and at that meeting, Hayden
questioned both Plaintiff and Lopez to determine the veracity of
Plaintiff's allegations.  See Hare 110-111; Hare Dep., at 73-74.
Plaintiff's subsequent grievance on August 21 alleged that Lopez
mistreated her during the August 18 meeting, a claim for which
there was no need for Hayden to investigate since he was present
for the meeting and knew what had and had not occurred.  See
Hayden Aff., ¶ 8.  Finally, there is no evidence to indicate that
Hayden was "covering up" for Lopez, and the record indicates that
Hayden reasonably found Plaintiff's complaints against Lopez to
be meritless.  Plaintiff's allegations of a cover up are
conclusory and are insufficient to meet Plaintiff's burden for a
retaliation claim at the summary judgment stage.  See Graham, 89
F.3d at 79.

Even if the Court were persuaded that there was a
causal connection between Plaintiff's complaints against Lopez
and her dismissal for her position as Catholic clerk, Hayden had

12

valid, non-discriminatory reasons for dismissing her.  "A finding
of sufficient permissible reasons to justify state action is
'readily drawn in the context of prison administration where...
prison officials have broad administrative and discretionary
authority.'"  Graham, 89 F.3d at 79 (quoting Lowrance v. Achtyl,
20 F.3d 529, 535 (2d Cir. 1994)).  Here, Hayden identified four
legitimate reasons for Plaintiff's removal: (1) she failed to
show up for work for 2 weeks[2]; (2) her behavior disrupted the
overall provision of Catholic services at Bedford Hills; (3) her
removal was recommended by all the other chaplains, including the
part-time chaplain, Sister MaryAnn Collins; and (4) the inability
of Plaintiff and Lopez to work together.  Hayden Aff., ¶¶ 10-11.

Plaintiff's allegations that Lopez independently
retaliated against her, by preventing her from returning to her
program assignment, falsely reporting her absence from her job,
and otherwise acting inappropriately toward her, are belied by
Plaintiff's acknowledgement that Lopez never made any statement
revealing that she engaged in any conduct with the intent to
retaliate against Plaintiff for writing complaint letters or for
any other act by Plaintiff.  (Hare Dep. at 135).  Plaintiff can

---

2 Plaintiff contends that she did show up for work but was sent away
by Lopez. This claim against Lopez is addressed, infra.  Hayden's
reliance on Lopez's absence report was reasonable and was a legitimate
basis for Hayden's decision to dismiss Plaintiff.

only point to her conclusory assumptions of Lopez's motive and has failed to adequately substantiate her claims to survive this motion for summary judgment.

Furthermore, even if Plaintiff did establish that Lopez filed a false report in retaliation for her complaints, Plaintiff cannot establish that the adverse action of her dismissal from her position as Catholic clerk by Hayden arose from that allegedly false report. As discussed above, Hayden chose to dismiss Plaintiff for three other legitimate reasons and would have done so regardless of the report. Hayden Aff., ¶¶ 10-11. See Graham, 89 F.3d at 79 (quoting Lowrance, 20 F.3d at 535).

**Plaintiff's Claim that Lopez Filed a False Misbehavior Report is Dismissed**

To the extent that Plaintiff claims Lopez falsely reported her absence from work for two weeks, this allegation does not support a claim. "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process...."[3] Faison v. Janicki, No. 03 Civ. 6475,

---

3 A plaintiff does have a claim "where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights." Franco v. Kelly, 854 F.2d 584, 588-89 (2d Cir. 1988). However, as discussed above, Plaintiff, to the

2007 WL 529310, at *4 (W.D.N.Y. Feb. 14, 2007) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)). See also Moore v. Casselbeny, 584 F. Supp. 2d 580, 582 (W.D.N.Y. 2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"); Flemings v. Kinney, No. 02 Civ. 9989, 2004 WL 1672448, at *3 (S.D.N.Y. Jul. 27, 2004) ("[i]t is well settled that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report'") (quoting Boddie, 105 F.3d at 862). Furthermore, the record does not support Plaintiff's assertion that Lopez's report was false. Officers Ruiz and Magoo both affirm that they were never instructed by Lopez not to allow Plaintiff to enter the chapel. Ruiz Aff., ¶ 3; Magoo Aff., ¶ 3. Lopez denies having falsified the report.

**Plaintiff's Claim that She was Unable to File a Grievance is Dismissed**

Plaintiff alleges that she was denied the right to file a grievance when Watson responded to Plaintiff's September 4, 2008 grievance, which requested that Lopez stop retaliating against her, by noting that Plaintiff no longer worked as a clerk and, thus, Reverend Lopez could not retaliate against her. See Hare 39-41.

---

extent she makes such a claim, fails to establish that Lopez was motivated by Plaintiff's complaints when she filed the allegedly false report.

Watson claims to have sent this memorandum to Plaintiff in an attempt to informally resolve the grievance, which is part of Watson's responsibilities, Watson Aff. ¶ 3, but Plaintiff alleges she understood the memorandum to indicate that she was not allowed to file a grievance.  Watson claims she would have formally filed the grievance if Plaintiff had contacted her and requested that it be formally filed.  Id.

While there is a dispute of fact as to whether Plaintiff was allowed to file a grievance, Plaintiff has no constitutionally protected right to file a grievance, and thus does not have a cognizable § 1983 claim.  See Shell v. Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim") (citing Cancel v. Goord, No. 00 Civ. 2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)); Mastroianni v. Reilly, 602 F. Supp. 2d 425, 437 (E.D.N.Y. 2009) ("[T]he grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism") (citing Swift v. Tweddell, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008)).  Notably, Defendants do not argue that Plaintiff has failed to exhaust her

claim of retaliation because this grievance was not processed through the entire grievance system.

**Plaintiff's Claims of Verbal Abuse are Dismissed**

Plaintiff accuses Lopez of approaching her on August 18, 2008 "in a menacing way, raising her hands toward plaintiff from behind in a motion as if to strangle plaintiff" (Pl. Opp. Aff. at 7) and asserts that Lopez "screamed" at her and called her a "liar" (Hare Dep. at 57) or otherwise spoke to her in an abusive manner.  While Lopez denies Hare's allegations regarding her conduct, even when the evidence concerning them is viewed most favorably to Plaintiff, these allegations do not support an action pursuant to § 1983.  The Eighth Amendment proscribes the "'unnecessary and wanton infliction of pain'" on prisoners by prison officials.  Boddie, 105 F.3d at 861 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Hare does not claim that any actual physical harm was caused to her by Lopez, and she acknowledged in her deposition testimony that, on the occasion when she alleges Lopez approached her in a physically threatening manner, "[m]y back was to her" (Hare Dep. at 61), and "I didn't see her ...." (Hare Dep. at 58).  According to Plaintiff, Officer Ruiz "stopped the whole incident" before any assault could take place.  (Hare Dep. at 57).

17

It is undisputed that there was no actual assault, and Plaintiff's evidence, viewed most favorably to her, establishes nothing more than verbal abuse.  As the Court held in <u>Aziz Zarif Shabazz v. Pico</u>, 994 F. Supp. 460, 474 (S.D.N.Y. 1998):

> [V]erbal harassment or profanity alone, "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.  <u>Del Carpio v. Walker</u>, No. 95 Civ. 1502 (RSP)(GJD), 1997 WL 642543, at * 6 (N.D.N.Y. Oct. 15, 1997) (citing <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); <u>Brown v. Croce</u>, 967 F. Supp. 101, 104 (S.D.N.Y. 1997)); <u>see Ramirez v. Holmes</u>, 921 F. Supp. 204, 210 (S.D.N.Y. 1996); <u>Alnutt v. Cleary</u>, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996); <u>Jermosen v. Coughlin</u>, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); <u>Beal v. City of New York</u>, No. 92 Civ. 0718(KMW), 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994), <u>aff'd</u>, 89 F.3d 826, 1995 WL 722263 (2d Cir. 1995); <u>Hurdle v. Ackerhalt</u>, No. 92-CV-1673, 1993 WL 71370, at *1-2 (N.D.N.Y. Mar. 8, 1993) (allegations of threats and harassment do not rise to the level of a Constitutional violation).

Plaintiff's claim fails because she does not allege that she suffered any physical injury.  <u>See</u> <u>Bouknight v. Shaw</u>, No. 08 Civ. 5187, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009) ("Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.") (citing <u>Purcell</u>, 790 F.2d at 265).  <u>See also</u> <u>Thompson v. Carter</u>, 284 F.3d

411, 418 (2d Cir. 2002) ("We agree with the majority of our sister circuits that [42 U.S.C. §] 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.")  Rather, Plaintiff contends that she suffered only "mental anguish" as a consequence of the Defendants' actions.

"Under certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation, so long as the pain is not *de minimus*." Shabazz, 994 F. Supp. at 475.  Plaintiff stated in her deposition that she was affected by Lopez's conduct particularly because she was a domestic violence victim and because Lopez came from a position of trust.  (Hare Dep. at 139).  However, Plaintiff admitted during her deposition that, notwithstanding the availability of mental health services, she never sought such services, but attained sufficient relief from her distress by speaking about it with a chaplain. (Hare Dep. at 139-40).  Based on Plaintiff's allegations and record, Plaintiff's mental pain was de minimus.  See Shabazz, 994 F. Supp. at 475 (mental anguish caused by repeated use of racial slurs was de minimus); Jermosen v. Coughlin, No. 87 Civ. 6267, 1993 WL 267357, at *6 (S.D.N.Y.

July 9, 1993), <u>aff'd</u>, 41 F.3d 1501 (2d Cir. 1994) (<u>de minimus</u> psychological harm when correctional officers "approached plaintiff with their nightsticks raised in a threatening position" before conducting a strip frisk).

**Plaintiff's Claims for Infringement of Her Religious Rights are Dismissed**

### a. The Alleged Removal of Religious Objects from the Sacristy

Hare's complaint discusses at length the alleged removal of religious articles from the Catholic sacristy at BHCF, but she has acknowledges that she did not observe anyone removing those articles, and that she has no personal knowledge regarding who is responsible for any such conduct. (Hare Dep. at 137; Pl. Opp. Aff. at 7). Lopez, for her part, denies any involvement in or knowledge of this occurrence. (Lopez Aff., ¶¶ 14-15). It appears that Plaintiff's only basis for claiming that Lopez had any involvement in the alleged removal of the articles in question is her assertion that she was told by Officer Magoo and through a grapevine of other inmates that Lopez had authorized other inmates to take this action. (Hare Dep. at 37; Pl. Opp. Aff. at 9). This hearsay claim is not corroborated by Officer Magoo; in fact, he has affirmed that he did not make such a statement to Hare. (Magoo Aff., ¶ 4). Likewise, Inmate Rose

20

Ramsey, who allegedly told Lucy Tuttle, who allegedly told Plaintiff, about Lopez's role in the removal of articles for the Catholic service has not provided an affidavit corroborating Plaintiff's contention.  Thus, Hare does not present admissible evidence to support her allegation that Lopez caused the removal of items from the Catholic sacristy.  See Finnegan v Board of Educ. of Enlarged City School Dist. of Troy, 30 F.3d 273, 274 (2d Cir. 1994) (hearsay that would not be admissible at trial cannot be relied upon in opposition to a motion for summary judgment). Without establishing Lopez's involvement in the alleged removal of Catholic items, Plaintiff has not established a claim.  As the Court of Appeals has recognized, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)).

Even if Plaintiff had established that Lopez bears responsibility for the removal of those articles from the sacristy, the conduct she alleges would not establish any violation of Hare's personal rights.  She does not claim that any of the articles in question belonged to her, and, in the absence

of specific criteria that Hare does not allege here, a plaintiff
does not have standing to assert the constitutional rights of
others.  Camacho v. Brandon, 317 F.3d 153, 159 (2d Cir. 2003) ("A
plaintiff may assert the constitutional claims of a third party
if the plaintiff can demonstrate: (1) injury to the plaintiff,
(2) a close relationship between the plaintiff and the third
party that would cause plaintiff to be an effective advocate for
the third party's rights, and (3) 'some hindrance to the third
party's ability to protect his or her own interests.'") (quoting
Campbell v. Louisiana, 523 U.S. 392, 397 (1998)).  Cf. Hudson v.
Palmer, 468 U.S. 517, 547 n. 13 (1984) (Stevens J., conc. in part
and diss. in part) ("A prisoner's possession of ... personal
property relating to religious observance, such as a Bible or a
crucifix, is surely protected by the Free Exercise Clause of the
First Amendment").  Thus, Hare's allegations regarding the
alleged removal and desecration of objects from the Catholic
sacristy does not give rise to any genuine dispute regarding
facts that would be material to her § 1983 action against Lopez.

**b.  The Alleged Denial of Plaintiff's Right to Practice Her
Religion**

Plaintiff alleges that Lopez impermissibly infringed
upon her right to practice religion.  She does not allege any

22

involvement in this deprivation by Hayden or Watson, so this claim is dismissed as to them.

In her complaint, Plaintiff asserts denial of "the right to practice Freedom of Religion," but she does not specify how this alleged violation of her civil rights occurred.  In her affirmation opposing the summary judgment motions[4], Plaintiff contends that Lopez prevented Plaintiff from continuing her Catholic video group and curtailed "all Catholic programs, which precluded plaintiff from participating in them, as they no longer were running."  Pl. Opp. Aff. at 8.  Also, referring to Lopez's alleged verbal abuse of Plaintiff on August 8, 2011, Plaintiff claims that "Lopez's actions effectively precluded any operations of religious programs for Catholic inmates."  Pl. Opp. Aff. at 6. These assertions are insufficient to place into issue facts that, if resolved in Plaintiff's favor, would entitle her to relief pursuant to Section § 1983.

To establish a free exercise claim under the First Amendment, a plaintiff must demonstrate that state action substantially burdened her observation of a "central religious

---

4 As with her retaliation claims, to the extent that Plaintiff's allegations of infringement on her rights to practice her religions are not contained in her complaint, but come from her deposition testimony and other filings, they are dismissed on this independent ground.  Kearney, 373 F. Supp. 2d at 440-41.

belief" without a "compelling government interest" justifying the
burden.  Skoros v. City of New York, 437 F.3d 1, 39 (2d Cir.
2006) (quoting Jimmy Swaggart Ministries v. Bd. of Equalization,
493 U.S. 378, 384-85 (1990)).  An inmate's right to the free
exercise of religion is "subject to limitations that arise both
as a consequence of being incarcerated and from 'valid
penological objectives.'"  Harris v. Lord, 957 F. Supp. 471, 474
(S.D.N.Y. 1997) (quoting O'Lone v. Estate of Shabazz, 482 U.S.
342 (1987)).

      With regard to the alleged curtailment of programs
such as the "Praise Dance" or the video activities that she
sought to organize, Plaintiff does not claim that these
programs were "central or important" to the practice of her
religion, an essential component of a claim that her
religious beliefs were "substantially burdened."  Ford v.
McGinness, 352 F.3d 582, 593-94 (2d Cir. 2003).

      Hare's claims regarding the "suspension" of Catholic
programs appear to be linked with her role in leading such
programs.  Plaintiff's papers and testimony recognize, however,
the Catholic Chaplain, Father O'Shea, retired in August of 2008.
The subsequent temporary suspension of programs that he had
supervised cannot be deemed an unreasonable infringement on

Plaintiff's practice of her religion, but simply a consequence of

the institution's temporary lack of a Catholic Chaplain.

Plaintiff's claim appears to be premised on her assumption that,

even in Father O'Shea's absence, she should have been permitted

to continue running these programs.  (See Hare Dep. at 105 ("Even

if I was not a clerk, I should have been allowed to run the

program")).  However, as discussed above, inmates have no right

to any particular position or assignment at a correctional

institution. See Gill, 824 F.2d at 194.

       Plaintiff's claim that Lopez prevented her from

attending Catholic Mass and other religious programming, to

the extent that she asserts it, is not supported by the record

and does not survive summary judgment even when all reasonable

inferences are made in her favor.  At her deposition she

testified as follows:

> Q. In general, do you recall at any time when you were
> trying to go to Catholic mass where you were not
> allowed to go?
>
> A. If [Lopez] knew I was in there, then I was harassed.
> If she told the officer this Sunday she found out, she
> would tell that officer. If that officer was there,
> then I would be harrassed.
>
> Q. How were you harassed?
>
> A. Because I was told to leave, I'm not allowed to be
> there.
>
> Q. How many times, to the best of your recollection,
> were you told that you had to leave the Catholic mass?

25

A. I would say a couple of times.  Like I said, I got tired of being harassed, and I just stopped going.

…

Q. What about programming, were you allowed to go to Catholic programming?

A. No.  Those were during the day.  That's when she really got me.  Then on Tuesday night she was there late.  She was there until 8 o'clock at night.  That was her late night.  She made sure that the officer knew I was not supposed to be there.

(Hare Dep. at 106-07).

Plaintiff does not identify the officers involved or specify the dates on which she was allegedly told to leave the chapel.  Plaintiff also provides no basis for her claim that, when they allegedly told her to leave, the officers were acting at the direction of Lopez, and does not claim to have observed Lopez giving any officer such instructions.  Officers Ruiz and Magoo, who were stationed outside the 112 Chapel during the period in question, have affirmed that they never received any such instruction from Lopez.  Ruiz Aff. ¶ 3; Magoo Aff. ¶ 3. Thus, Plaintiff has not presented any admissible evidence that would support her claim that Lopez prevented her from attending Mass or other religious services, and the record suggests that she was not denied entry to Mass.

Moreover, it is unclear whether being told to leave the chapel "a couple of times" (Hare Dep. at 107) - even when the evidence is viewed most favorably to Plaintiff - rises to the level of a "substantial burden" on Hare's religious freedom.  It is undisputed that Hare's right to free exercise of religion includes the right to attend religious services.  O'Lone, 482 U.S. 342, 348 (1987).  However, that right is not unlimited or absolute, but is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives."  Id.  Because Plaintiff provides no particulars as to the dates and times when she was allegedly prevented from attending Mass, and does not identify the officers who allegedly prevented her from doing so, her claims are too vague to permit the Court to determine both that the alleged removal actually occurred and, if it did, whether it was justified by a compelling government interest.  See Skoros, 437 F.3d at 39.

In view of all of these circumstances, the Court concludes that Hare's claim that her freedom of religion was infringed is not based on facts that would entitle her to relief pursuant to § 1983.  See Salahuddin v. Coughlin, 781 F.2d 24, 29 (2d Cir. 1986) (summary judgment stage is appropriate juncture for pro se plaintiffs to make clear the facts that they believe

27

support their claims, and for a court to grant summary judgment
where the underlying facts are insufficient).

## Plaintiff's Reference to Additional Witnesses Does Not Merit a Denial of Summary Judgment

Plaintiff claims that Defendants' motions for summary
judgment should be denied on the grounds that two witnesses have
yet to file affidavits.  Four months have passed since Defendants
filed their motions for summary judgment, and Plaintiff has not
attempted to submit these additional affidavits.  Furthermore,
Plaintiffs' description of what their witnesses will say
demonstrates that they would not rescue her claims.

Plaintiff contends that Inmate Lucy Tuttle observed
Lopez verbally abuse and physically threaten her in the chapel on
August 18, 2008 and in the subsequent meeting on that same day
(to the extent that these are separate instances).  As was
discussed above, Lopez's alleged verbal abuse does not support a
§ 1983 claim for cruel and unusual punishment, as Plaintiff
alleges.

Plaintiff also contends that Lieutenant Collins was
Sergeant Collins at BHCF at the time Lopez prevented Plaintiff
from entering her work assignment as Catholic Chaplain's Clerk,

again without specifying when this occurred.  Lopez's alleged
refusal to allow Plaintiff to work as Catholic clerk is
insufficient to support § 1983 claim, as Lopez holds no right to
her prison assignment.  To the extent that Collins's affidavit
would support Plaintiff's allegation that Lopez falsely reported
her absent from work in retaliation for the Plaintiff's
complaints, Plaintiff has not established that her complaints
motivated the allegedly false reporting.  Furthermore, Plaintiff
cannot establish that the adverse action of her removal from her
position as Catholic clerk was caused by the allegedly false
reports, as Hayden cited other valid reasons for his decision to
remove her.


**Conclusion**

        For the reasons stated above, Defendants' motions for
summary judgment are granted.


        It is so ordered.


New York, NY
April  /4, 2011                              ROBERT W. SWEET
                                                 U.S.D.J.